We'll call the next matter. Good morning and may it please the court, Joel Mandelman for Rondell Slaughter. May I reserve three minutes for rebuttal? Granted. I would like to address the trial counsel in effect in this claim. And this is the claim that the Superior Court originally granted relief on. The case went up to the Pennsylvania Supreme Court. The Supreme Court remanded for an application of prejudice under Strickland. Counselor? I was just going to say, it seems like the only live claim, I know that we said you should address appellate. I agree with the court, yeah. And that's why you didn't address it in your reply brief. So you're going to focus on the IATC claim, not the IAAC claim. Exactly, Judge. And when this claim comes back, the panel splits 2-1. And that decision is now at issue here. And that decision, the majority concluded that the alternate exposure to outside influence was speculative. And I want to start there because the jury got this case on Thursday afternoon. And it wasn't until Monday that the substitution took place. Counsel, can I clarify? Because I understood that you were raising, and we had actually in our certification included both trial counsel and appellate counsel. You've raised both with us. And I had understood from your briefing in the district court that you had attempted to raise both in the district court. Can you address a couple of issues, and that is the threshold issues of both the procedural default on the appellate claim in the state courts and whether the claim of ineffective assistance of appellate counsel was adequately raised in the district court here in your federal habeas petition? I guess in response to Judge Hardiman's question, I think when you were talking about, Judge Hardiman's trial counsel claim was really the only live claim because of concerns about fair presentation with the appellate counsel claim. And having reviewed the pleadings, I think that's correct. And your argument is that there was error on the trial counsel claim because it wasn't procedurally defaulted. It was not. That claim was not procedurally defaulted. And tell us why that's so. Well, we've got that decision from Judge Bender where he actually grants relief on this very claim. So I think... We're doing habeas review, and there was a determination made on the harmlessness prong when this went back on the trial claim. There's a separate claim, and it sounds like you're waving here as to appellate counsel because the... In terms of the prejudice of appellate counsel raising the trial court's error in seating the alternate juror would relate to whether there would have been success at the appellate stage on direct appeal with state law that suggests prejudice would be presumed. So we have the issues in terms of prejudice where you're alleging ineffective assistance of counsel as to trial counsel where the prejudice is one that was addressed by the state courts, including when it went back on the harmlessness standard and on appeal where the question is whether if it had been... If the trial court's error in seating the juror had been raised by appellate counsel, whether there would have been success on appeal in getting a new trial. You're telling us that that second claim you don't see as viable and you're waving it before us. Let me... There are two components to the trial counsel claim insofar as trial counsel was ineffective for not preserving the issue for appeal regarding this... The questioning of the replacement juror and... Hunter's requirements. Yes. So that claim we contend is a good claim. That claim was fairly presented and again, in Judge Bender's dissent, he identifies that as one of the reasons that trial counsel was, in fact, ineffective. And the court suggested, and I know the Commonwealth has suggested in their brief, that there was some state law determination here. And this came back for a determination of prejudice under Strickland, which this court can certainly review. So it's your position that the claim of ineffective assistance of appellate counsel was not fairly presented to the state courts? From this record, I think I'm constrained to concede that. All right, but let's... On the trial counsel, if we agree with you that the district court erred in saying that it wasn't presented, you've still got another hurdle to get over, right? Under AEDPA. Because the state court... Let's say we agree with you that the state court did adjudicate this claim of ineffective assistance of trial counsel, you've still got to climb the steep hill that AEDPA presents, correct? We have to show that the decision was an unreasonable application. We have to satisfy 2254 D.B. So tell us why that's so. And why isn't this within that sort of broad range of deference that we're required to apply under AEDPA? So that decision... The analysis in there is pretty brief. And it does not discuss at all this sort of gap between when the juror is... When the jury retires to deliberate and then when the juror is re-seated. And that's critical in a case that's... This was a really emotional six-day trial. There was testimony that Sheena Washington said she jumped out of a second-story window here. I mean, and then there's no questioning at all of this juror about exposure to outside influence from... Even though she was gone from Thursday. And this is... So that's the error. That's the Saunders error. But now you've got to show that it's prejudicial. So, you know, what I guess you'd like to see in this record would be some deposition testimony, some affidavits. Hey, I was on this jury and you're not going to believe what happened. I went home over the weekend and I saw this on TV. But I didn't see any sort of evidentiary proffer here of the sort that would be helpful to Mr. Slaughter. What am I missing there? I think you're correct on that point. But there is here... In fact, the Superior Court characterized it in the majority opinion as speculative. And we don't think that there's anything speculative about the fact that a juror here sat for six days in a very emotional case. This was a fire that was two miles from the CJC. And then would have spoken about it with friends, family. But that's... Let me cut you off for a minute. Would have spoken about it. That sounds like you're asking us to make some sort of default rule that in a fact pattern like this, we should assume that there was some sort of extraneous influence on this jury. Well, trial courts are scrupulous about warning jurors. Don't talk about... Don't discuss the case. Don't read the paper. And since we presume in other settings, that is to say, when a trial court charges a jury on principles of law to be applied in their verdict, and we presume that jurors follow a court's instruction, can't we presume the same thing with an instruction to jurors that they're not to discuss the case, they're not to be subject to extraneous sources of information? Chief Judge Smith, so when the replacement juror did not have the benefit of those instructions on Friday when the jury was sent home for the weekend, and Judge Bright told them specifically, like, you know, again, no investigations, no... The trial started on Thursday? The trial started the preceding week. So, and I don't know the record prior to that, but it seems to me highly unlikely that the court would not have provided those standard instructions just about every day at the end of the day. So, this... But then once the juror... What happens here at the end is, so on Thursday, the jurors... This juror is sent home. So there is, in fact, some confusion. And she is told to, quote, stand by for a little while. That's the language. And then she's recalled on Monday because Juror 7 is sick. So... I'm curious if I can switch gears a little bit, just for our understanding of the defender's position in terms of fair presentation, which, of course, is an issue that we have wrestled with in our case law. So, in a case where we have, in the 2009 petition, the issue of appellate ineffective assistance briefs on appeal in the Superior Court in 2013, the argument raised that appellant was denied due process and effective assistance by both trial and appellate counsel for the failure to object as to the alternative juror, the argument that prior counsel was ineffective for failing to properly object to the trial court error of empaneling the alternate and failing to preserve this issue for appeal, and then the request for a new trial, which would be the remedy on appeal, had it been raised on direct appeal, and where the Superior Court, in its own order, describes the claim that was raised as involving both trial and appellate counsel. It's your position, it's the defender's position in terms of our fair notice jurisprudence that that's not sufficient to raise it before the state courts. Well, we would, I mean, we'd be grateful if the court felt that it could reach it on this record. Well, that's, you're the advocate for that, and you told us that it was not fairly presented. I'm trying to understand, in terms of the jurisprudence, if you could explain why that is insufficient, and you have conceded that it was not fairly presented on this record. The concern that we had was that the argument really focused on trial counsel's performance, although appellate counsel was mentioned in the heading. Thank you. Thank you very much. We'll have you back on rebuttal, Mr. Vanderman. Mr. Goldworth. Good morning, Your Honors. My name is Joshua Goldworth. I represent the Commonwealth of Pennsylvania's official respondents, the appellees. I'd like to begin to respond to Chief Judge Smith's question. I believe it's in footnotes six of my brief. I believe it on every, I think on pretty much every day of the trial, the judge gave a standard instruction about avoiding outside information, where the language was very similar, if not the same every single day. No outside information, no visits to the scene, no experiments, no discussions. And if anybody has exposed you or tried to expose you to any such information, you need to notify the court. And so I think that instruction is given every day. But I wanted otherwise to begin by saying, even putting aside all other issues for the moment, including whether the claims put to this court are really the same claims that were put to the state courts, this appeal at root is really about whether counsel rendered ineffective assistance by failing to request that the judge pose questions called for by state law, even in the absence of any reason to believe that those questions would have yielded unsatisfactory answers. Well, isn't that what we already have from Saunders? And Saunders says, as soon as there is the error in the seating of the juror, of the alternate, that's what gives rise to a presumption of prejudice. The jury instructions the court was advising are a means to rebut that presumption. And I think what we're talking about here, unlike a claim of structural error under constitutional law, there is no challenge here to the adequacy of the direction by the judge that the jury re-deliberate, which I believe is the only part that the constitution requires. I believe that what is left is just a claim of state law, a claim of ineffective assistance, a failure to preserve a claim of state law error, where I think that is a creature of state law, where the state courts have authority to decide whether any error occurred, and if so, what to do about it. Effectiveness is not a creature of state law. No, that's correct. And here, isn't it the case that trial counsel fought the good fight? I mean, clearly there was engagement by trial counsel, but it seems clear that trial counsel did make a mistake by not asking for a Saunders instruction. Trial counsel had a winning argument on that, right? No, I don't think so. I think counsel's a winning argument only on three unrealistic assumptions, each of which violate the very presumptions about how judges and juries behave. Don't we know that it was already a winning argument because the Pennsylvania Supreme Court told us so? When the Pennsylvania Supreme Court sent it back, the basis was that the harmlessness standard that had been applied on PCRA was that of direct appeal instead of the appropriate standard on PCRA, which indicates by its terms that had it been raised on direct appeal, that prejudice would have been presumed. I don't read that way at all, Your Honor. I believe the Pennsylvania Supreme Court summarily reversed the Superior Court's decision, and I don't read that as a partial affirmance of everything else it did. No, but the Pennsylvania Supreme Court explained its reasoning, and it said that it used the harmless error standard on direct appeal, and that that was the wrong standard to use. In other words, on direct appeal, had it been raised, the Supreme Court seems to be indicating in its statement that that would have been a successful claim. How do appellate counsel- I don't read the Pennsylvania Supreme Court's per curiam order that way, and I think even if you take a look at the opinion of the dissenting judge, the original trial author and the dissenting judge on remand, I mean, his whole argument was that trial counsel on that theory was ineffective precisely for failing to preserve this error for direct appeal. I mean, that's what that's- Trial counsel did preserve it. No, that's not, I mean- Well, Pennsylvania law makes crystal clear that where a trial court has overruled counsel's objections, that failing to request curative instructions does not result in a waiver. So there were two issues here, right? One is the seating of the juror, which, and there was a proper objection, so that issue was preserved to that extent, right, under Pennsylvania waiver law, and- Could we stop right there? Because I'd like to know what the objection was. What was the specific objection raised by trial counsel at that juncture when the juror, the alternate was presented for seating? The specific objection raised was the seating of the alternate at all as opposed to declaring a mistrial, and even the- It was if, judge, if you're going to seat this juror, it's a mistrial, we need to start over again. Correct. They moved for a mistrial. Correct. That is, the defense moved for a mistrial and was denied, so. I mean, correct, correct, and the argument, as it comes, as it was briefed before this court, the argument was, so far, so good, where trial counsel rendered ineffective assistance was by failing to make the secondary objection where, to say, your honor- Fonder's objection. Correct, judge. If you're going to seat this juror, you need to engage in this colloquy with these jurors, and you're saying that was never raised, but that's, and what I'm suggesting, counsel, is that seems to be ineffective assistance of counsel, which is a constitutional claim. I agree that it's a constitutional claim, albeit a constitutional claim for failing to raise a claim of a state law error, but in terms of deficient performance, I don't think deficient performance, I don't think we look, typically, just at single alleged errors by counsel. I think, in general, you have to look at counsel's performance as a whole, as the Supreme Court- No, but yeah, but this was a whopper. This was a whopper. There was a Supreme Court case law that gave this lawyer a really good argument, had it been made. Now, the lawyer made some other arguments, but, I don't know, let me suggest that if we go against you on this, then your fallback is the prejudice issue, right? Well, I think that's right, because again, there is an almost irrebuttable presumption of the law that jurors follow their instructions, and I think the argument that you would have had a winning argument, I think that depends on several principles, each of which run against that very well-established, almost invariable assumption of the law. And I would say that if we were ever to start to depart or question that assumption, this would be a very, very odd case to do so. This is a case in which you have an alternate juror who's already watched all the other alternate jurors be pressed into service on the jury, because other jurors have had to leave. It's clear that one of the jurors who's on the jury is pregnant and has been feeling unwell all week, and where the judge says in so many words, I cannot dismiss you because you're the last alternate that we have left, we're gonna need you to stand by in case you're needed. So the judge says you're not dismissed for service because we may need you. I mean, any reasonable juror under those circumstances would recognize that there is a more than hypothetical, more than theoretical chance that she's actually going to be called upon as the other alternates have been. I mean, in all cases, this just seems a particularly strange case to assume or to presume that the juror likely figured the judge didn't mean it, and would go off and do exactly the opposite of what the judge directed. Can you address the procedural default issue? The trial court here said that this issue was defaulted, right? We're talking about the trial court? The district court. I'm sorry, the ineffective assistance of trial counsel claim? Yes. I think that the... I'm not clear as to why that was correct, that this was procedurally defaulted, because I'll just show you my cards here. Slaughter raised the issue of trial ineffectiveness, correct? And he claimed in his PCRA appellate briefs that trial counsel was ineffective for failing to, quote, properly object. Now, I concede that that's a high level of generality. Yes. However, couldn't the court reasonably construe that to be a claim challenging trial counsel's failure to object to the lack of a proper jury instruction? I think that the magistrate judge read the record reasonably in saying that, you know, it really was too high a level of generality to really view this as the same type of... as truly the same claim, and that although initially, sua sponte, the state superior court... Adjudicated it on the merits. And then said, but then again, after the reversal from the state supreme court, then retrained its attention on the claim as it was actually framed by the petitioner. But nonetheless, it adjudicated it on the merits. Be that as it may, there's no, I think, contest here that to the extent the claim was properly before this court that review has to be deferential under subsection D. Okay, so then tell us why it survives that favorable to you standard of review. Because, again, because I think the state courts ruled reasonably in including this is the sort of claim that on collateral review for ineffective assistance, you have to show strickling prejudice and that the petitioner failed to do so because the entire argument for prejudice, again, relies on basically reversing the presumption that jurors follow their instructions. I think as I trace... The key point here, Mr. Goldward, is what is the default rule? And if I hear you correctly, you're saying the default rule is presumption of regularity here in the conduct of the trial and absent some sort of evidentiary proffer from the petitioner, that default rule stands. Is that the essence of your position? Absolutely, absolutely, Your Honor. That's the case because we're on habeas review, right? And when we have the Pennsylvania Supreme Court telling us that actual prejudice is required on PCRA review, whereas on direct review, we know from Saunders, it's a presumption of prejudice. But that's off the table, so we're dealing with the Pennsylvania Supreme Court requiring actual prejudice, and that's where your argument as to regularity comes into play. I think that's right, and I think in all kinds of other contexts, we do make that assumption, that presumption that jurors follow their instructions. Certainly we saw that in the James case from six weeks ago, and in the case that I cited in my brief, U.S. v. Olano, which is commonly cited just for the plain error standard that we see applied all the time on direct review in federal cases. I mean, that was a case in which I think you had a multi-week, maybe even multi-month financial fraud trial in federal district court, and the judge, in violation of the federal criminal rules, allows unauthorized persons into the jury room during deliberation, allows the alternates into the jury room during deliberations, even though after this very, very long trial, but says, but I'm asking you, I'm directing you, you can't talk, you can't participate in the deliberations. You have to just sit there silently like flies on the wall and following a reversal in the Ninth Circuit, because there was no objection to this in the trial court, in the district court. It goes to the Supreme Court and it says, your substantial rights were not affected. It's not plain error. We presume that jurors follow their instructions, and there's no reason to believe the jurors did otherwise in this case. And I should add, and I should add, this is not and never has been a case in which the argument is, we were denied our ability to make a record about actual juror bias or actual impermissible influence on the jury or on a juror. The argument in this case is, we get to win without having to show that. Well, that would have been true with, because of the presumption of prejudice under Saunders, that was an error on the part of the trial court, and the presumption of prejudice would have pertained on direct appeal as well. I think this is sort of falling into the thing where we presume that the function of an objection is just to create a better claim for appeal, and it isn't. I think the point of a contemporaneous objection is to allow the judge the chance to either remedy or prevent the error from being committed in the first place. And I think that in this particular case, and this dovetails with my argument about the presumptions, is there's no good, the only three plausible. Yes, here is one that under state law, we've been told, gives rise to a presumption of prejudice under state law, right? And under state law, we also know that this practice has been tolerated, and the entire argument, as I understand it, in this case, was that counsel failed to preserve the necessary secondary objection that would have allowed this to be a winning claim on direct appeal. But again, under Pennsylvania law, and both Supreme Court law and Superior Court cases, preserving the claim, the issue that gave rise to the presumption of prejudice, that is the seating of the juror, as long as trial counsel has ruled counsel's objection, then failing to request curative instructions under Pennsylvania law is not a waiver. So there are two separate issues, right? One is raising it initially, and the other is requesting the instructions that would have rebutted the presumption. I mean, I'm not entirely certain that's right, but in any event, that's certainly not how the original panel author, and certainly not how the dissenter on remand viewed Pennsylvania law. And again, on Pennsylvania law, I'll defer to the Pennsylvania courts, but their holding in this case was just, this is the kind of case that when it comes to us on collateral review, you have to prove specific prejudice under Strickland, and you haven't done so. And that one I believe in my briefs. The only three ways where counsel's allegedly deficient performance might plausibly have led to a different outcome, even of the jury selection process, let alone the trial, and all of those possibilities I think contravene very well established presumptions about how judges will respond to a request to give that instruction, and jurors' abilities to obey their, to follow their instructions. Are there any further questions? Thank you very much. Thank you, Judge. Mr. Madman, you have rebuttal. Thank you, Judge. This also, the substitution here, in addition to not questioning the replacement juror, the substitution took place after the jury announced it was deadlocked, and in a case that resulted in two acquittals. So this is not simply, hey, we've just got a juror and we're not certain. There is a long gap here, and in Claudio v. Snyder, there's, it's clear those three jurors were sequestered overnight, and then they were questioned, did you discuss the case amongst yourselves, and did you do any outside research before that replacement took place? In James, it's presumed that Judge Gomez followed 24C of the rules, the Federal Rules of Criminal Procedure, and that rule says must ensure that the juror did not discuss the case. So this court's jurisprudence is clear. You don't substitute a juror without that sort of reassurance, and not only do we not have that reassurance here, it took place in a case that resulted in two acquittals. This was not an endorsement of the case that the Commonwealth presented. They argued to the jury. These four guys went in there together, and it wasn't a play scrabble. The jury came back after some really protracted deliberations. There was three Spencer charges here. I mean, there was five questions. This was a really, this was a jury that was troubled about this case, and Mr. Slaughter got 35 to 70 years after the judge here changed the personnel on the jury after three days without questioning this juror, and this is sort of the most fundamental part of practice. I mean, again, this jury. Everything you say, Mr. Mandelman, I think could plausibly support a problem. The question I think that we have to wrestle with is in the absence of any proff or in the absence of evidence on habeas, it still strikes me that we would need to make a default rule here that the absence of evidence is somehow okay because, I don't know. I mean, it just sounds like a tough ask, I guess, is what I'm positing to you. And it's simply, there is strong evidence here to support the inference. It is. I'm not sure of that because when I read the record, I mean, there were some pretty distinct differences between the two who were convicted and the two who weren't in terms of how well they were known to the victim. That's certainly not how the prosecutor argued to the jury. It's not what Mr. Bundy's attorney said. These guys all knew each other. And the commonwealth's argument was, hey, everybody knew each other here. I don't think that was in dispute at all. Counsel, on a claim where the standard is a showing of actual prejudice and we are reviewing the state court's determination in that regard under EDPA's deferential review, how could the fact that the jury reached the verdict of guilty itself be sufficient to show actual prejudice or, more importantly for our purposes, to show that the state court made a decision that was so unreasonable that no reasonable jurist could have reached that conclusion for EDPA review? That analysis is extremely scant that the Superior Court performed. It doesn't discuss at all this gap. And the language the juror got specifically was stand by for a little while. No juror is going to reason. I understand Judge Smith's question and, you know, hey, you're warned all the time. You know, don't discuss the case. But once the case is over, you're going to talk about it, this case especially. Thank you very much, Madam. Thank you, Counsel. We will take the case under advisement.